Charlie M. FOOTE, Appellant,

v.

UNITED STATES, Appellee.

No. 94–CM–1597.

District of Columbia Court of Appeals.

Argued Dec. 14, 1995.

Decided Jan. 25, 1996.

---

H. Montee Wynn, Jr., Washington, for appellant.

Ann K.H. Simon, Assistant United States Attorney, with whom Eric H. Holder, Jr.,

United States Attorney, John R. Fisher and Cynthia D. Walicki–Chan, Assistant United States Attorneys, were on the brief, Washington, for appellee.

Before TERRY, SCHWELB and KING, Associate Judges.

SCHWELB, Associate Judge:

Following a bench trial, Charlie M. Foote was convicted of unlawful possession of cocaine [1] and of possession of drug paraphernalia with intent to use (PDP).[2] On appeal, he contends, *inter alia*, that the trial judge erred in denying his demand for a jury trial.[3] We affirm.

## I.

### BACKGROUND

On August 18, 1994, Officer Ronzelle Baker was in a marked police cruiser patrolling an area of northwest Washington, D.C. Baker observed Foote, who was on the sidewalk, display a small, clear ziplock bag to an unknown man and woman. Baker was aware that cocaine is normally packaged in ziplock bags of this kind, and the area in question is known for a high volume of unlawful drug activity. Officer Baker therefore suspected that unlawful activity might be afoot.

Upon noticing the police cruiser, Foote placed the ziplock bag inside a potato chip bag which he was holding in his left hand. Officer Baker got out of the cruiser, approached Foote, and grabbed Foote's left hand. From Foote's hand, Baker recovered the potato chip bag, as well as a green ziplock bag containing what turned out to be cocaine residue. Inside the potato chip bag, Baker found a clear ziplock bag, presumably the one which Foote had been displaying when Baker first observed him. The clear ziplock bag contained several rocks of crack cocaine. Foote was arrested, and a search incident to his arrest resulted in the recovery

---

1. D.C.Code § 33–541(d) (1995 Supp.).

2. D.C.Code § 33–603(a) (1993).

3. Foote also contends that the evidence against him was seized in violation of the Fourth Amendment. We conclude that this issue is controlled by *In re J.D.R.*, 637 A.2d 849 (D.C.1994), and that Foote's motion to suppress was properly denied.

from his person of drug paraphernalia (specifically two crack pipes).

Foote was charged by information with two misdemeanor offenses, namely unlawful possession of cocaine and PDP. Foote's attorney moved unsuccessfully to suppress the cocaine and paraphernalia. See note 3, *supra.* Foote also demanded a jury trial on the cocaine possession count, but the trial judge denied the motion. At the conclusion of a non-jury trial, the judge convicted Foote of both charged offenses and imposed an aggregate sentence of incarceration for 180 days. This appeal followed.

## II.

### FOOTE'S RIGHT TO A JURY TRIAL

On appeal, Foote presents three separate theories in support of his claim that he was entitled to a jury trial. We conclude that none of them has merit.

#### A. Aggregation.

■ Foote argues that his demand for a jury trial should have been granted because the aggregate maximum period of incarceration for the offenses with which he was charged exceeds 180 days. He points out that a defendant charged with a single offense for which such punishment is authorized has a constitutional right to a jury trial. *See, e.g., Blanton v. City of N. Las Vegas,* 489 U.S. 538, 542, 109 S.Ct. 1289, 1292–93, 103 L.Ed.2d 550 (1989). Foote asserts that there is no principled distinction in this regard between his own case and *Blanton. Cf. Codispoti v. Pennsylvania,* 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974).

■ Defense counsel explicitly advised the trial judge, however, that he was not making the "aggregation" argument which Foote now seeks to present on appeal. Accordingly, even if we assume without deciding that the issue is properly before us at all, *cf. Byrd v. United States,* 502 A.2d 451, 453 (D.C.1985), our review is for "plain error." Under that standard, Foote must establish that by failing, on his own initiative, to apply the aggregation principle, the judge made a

"plain" or "obvious" error, *see United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993), and that this error resulted in a miscarriage of justice. *Harris v. United States,* 602 A.2d 154, 159 (D.C.1992) (en banc). Foote has made no such showing.

The aggregation issue is presently before this court, sitting en banc, in *Burgess v. United States,* No. 95–CM–1352 (argued Nov. 2, 1995). At the time the trial judge ruled on Foote's jury demand, however, the issue had been resolved in this jurisdiction squarely against Foote's position. See authorities cited in *Foster v. Canan,* 661 A.2d 636 (D.C.1995) (per curiam). The trial judge was without authority to overrule binding appellate precedent, and his failure to do so was not plain error.

Moreover, the courts of other jurisdictions are sharply divided on the question whether a defendant in Foote's position is constitutionally entitled to a jury trial. *Compare United States v. Lewis,* 65 F.3d 252 (2d Cir.), *petition for cert. filed,* No. 95–6465 (U.S. Oct. 20, 1995), *with United States v. Coppins,* 953 F.2d 86 (4th Cir.1991). Under these circumstances, the judge's failure to conclude, *sua sponte,* that Foote was entitled to a jury trial because the aggregate incarceration for the two charged offenses exceeded 180 days was not "obviously" wrong, there was no miscarriage of justice, and there was no plain error.

#### B. The Legislative History of the Misdemeanor Streamlining Act.

■ Foote also relies on the history of the Misdemeanor Streamlining Act of 1994 (MSA),[4] in which the Council reduced to 180 days the maximum period of incarceration for many misdemeanor offenses. According to Foote, the legislative history establishes that the MSA did not represent a judgment by the Council that the streamlined offenses were "petty" rather than "serious." *Cf. Blanton, supra,* 489 U.S. at 543, 109 S.Ct. at 1293. Foote contends, on the contrary, that the MSAa constitutes a "naked attempt to eliminate the right to trial by jury." In support of this thesis, Foote points to various

4. *See* Title I of D.C.Act 10–238, 41 D.C.Reg. 2608 (1994).

statements in the MSA's legislative history to the effect that its purpose was to reduce the length of sentences for various crimes to make them non-jury demandable, *see, e.g.,* COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON THE JUDICIARY, REPORT ON BILL 10–98, at 3 (Jan. 26, 1994), and that its practical effect would not be to reduce the punishment actually meted out to misdemeanants.

The government argues that Foote's contentions with respect to the history of the MSA were not raised in the trial court, and that the issues raised on appeal in that regard are therefore subject to review only for plain error. In response, Foote relies on a very vague allusion to the issue in his oral argument to the trial court [5] and on an even more oblique comment in his written "Jury Demand." [6] But even if we assume, without deciding, that Foote has adequately preserved the issue for review—a questionable assumption at best—his claim must fail on the merits, for this court rejected an almost identical argument in *Stevenson v. District of Columbia,* 562 A.2d 622, 623 n. 1 (D.C.1989) (per curiam). We conclude that *Stevenson* is controlling.

### C. Collateral Penalties.

Foote next contends that the legislature [7] has "packed" the offenses of unlawful drug possession and PDP with penalties, other than incarceration, which are so severe that these offenses cannot be "petty" for purposes of the Sixth Amendment's guarantee of the right to jury trial. He asserts that persons who unlawfully possess a controlled substance are subject to residential eviction,[8] forfeiture of assets,[9] revocation of driving privileges,[10] exclusion or deportation from the United States,[11] ineligibility for federal benefits,[12] and enhanced periods of incarceration for repeat offenders.[13]

Foote brought some, but not all, of these statutes to the attention of the trial court. His counsel wrote in his jury demand that

> [t]he existence of other statutory penalties—such as the forfeiture provisions of 33 D.C.Code 552(a)—reflects a legislative determination that possession of cocaine is a serious offense. [Citing *Blanton* ].

During the pretrial hearing, Foote's attorney stated that

> other people in this jurisdiction if they're convicted of simple possession can be ... denied housing benefits, can be kicked out of their federally financed housing, ... can be denied the right to a driver's license.

The government contends that, where any specific statutory provision on which Foote now relies was not individually brought to the trial judge's attention, the plain error standard applies with respect to Foote's argument based on that provision. We discern potential merit in the government's position, for it is unreasonable to expect the trial judge to search the many volumes of the District of Columbia Code (and, perhaps, of the United States Code too) for provisions

---

5. "That's essentially what the City Council has done here. They've said this is still a serious offense, but we'll cut down your maximum exposure to 180 days (versus 181), that magic day that takes us out of the right to a jury trial."

6. "There is an impropriety in utilizing the emergency legislative powers of the Council of the District of Columbia to—in a misguided attempt to effect judicial economy—nullify an accused's traditional right to a jury trial in narcotics cases. *Dimick v. Schiedt,* 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935)."

7. In developing this contention, Foote actually refers both to federal legislation enacted by Congress and to local statutes passed by the Council of the District of Columbia.

8. Foote refers to D.C.Code § 45–2559.2 (1995 Supp.), authorizing civil proceedings for possession of a rental unit which is being used as a "drug haven."

9. *See* D.C.Code § 33–552(a) (1993 & 1995 Supp.); 21 U.S.C. § 881 (1994).

10. *See* D.C.Code § 40–302 (1990). Foote has not invoked the more severe provisions of D.C.Code § 40–302.1 (1995 Supp.), under which the Mayor is required, "in the absence of compelling circumstances warranting an exception," to revoke the operator's permit of a person convicted of a drug offense.

11. *See* 8 U.S.C. § 1182(a)(2)(A) (1994) (exclusion); 8 U.S.C. § 1251(a)(2)(B) (1994) (deportation).

12. *See* 21 U.S.C. § 862 (1994).

13. *See, e.g.,* D.C.Code § 22–104(a) (1995 Supp.).

relevant to Foote's contentions. Foote responds, however, that because he identified in the trial court the basic issue he now presents on appeal, and because he "created a record" of additional statutory penalties, "the plain error standard is the incorrect one to apply." We need not conclusively resolve the applicability *vel non* of the plain error doctrine,[14] because even if we assume that Foote sufficiently preserved for review the issue of collateral penalties, and even if we therefore consider all of the statutes cited to this court as part of our *de novo* review of the trial judge's legal conclusions, Foote's substantive contentions must fail.

In *Blanton*, the Supreme Court considered the question whether a person charged under Nevada law with driving under the influence of alcohol (DUI) was entitled to a jury trial. 489 U.S. at 539, 109 S.Ct. at 1291. The maximum penalty for DUI was imprisonment for six months[15] and a $1,000 fine. The Nevada statute also required the automatic suspension of a convicted defendant's driver's license for 90 days. Repeat offenders were subject to increased penalties. *Id.* at 539–40, 109 S.Ct. at 1291–92.

■ The Supreme Court held that the defendants were not entitled to a jury trial. *Id.* at 539, 109 S.Ct. at 1291. The Court reiterated that "there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision," *id.* at 541, 109 S.Ct. at 1292 (quoting *Duncan v. Louisiana*, 391 U.S. 145, 159, 88 S.Ct. 1444, 1452–53, 20 L.Ed.2d 491 (1968)), and that the most relevant criterion for determining the seriousness of the offense is "the severity of the maximum authorized penalty." *Id.* (quoting *Baldwin v. New York*, 399 U.S. 66, 68, 90 S.Ct. 1886, 1887–88, 26 L.Ed.2d 437 (1970) (plurality opinion)). The Court further stated that

[p]rimary emphasis ... must be placed on the maximum authorized period of incarceration.

Penalties such as probation or a fine may engender a significant infringement of personal freedom ..., but they cannot approximate in severity the loss of liberty that a prison term entails. Indeed, because incarceration is an intrinsically different form of punishment, ... it is the most powerful indication whether an offense is "serious."

*Id.* at 542, 109 S.Ct. at 1292 (citations and internal quotation marks omitted).

■ Elaborating upon its decision in *Baldwin*, the Court found it "appropriate to presume" that an offense carrying a maximum prison term of six months or less is viewed by society as "petty." *Id.* at 543, 109 S.Ct. at 1293. In order to be entitled to a jury trial for such an offense, the defendant must show that any additional penalties (other than incarceration) "are so severe that they *clearly* reflect a legislative determination that the offense in question is a 'serious' one." *Id.* (emphasis added). The Court stated that this standard, although "somewhat imprecise," would "ensure the availability of a jury trial in the *rare situation* where a legislature packs an offense it deems 'serious' with onerous penalties that nonetheless do not puncture the 6–month incarceration line." *Id.* (emphasis added; citations and internal quotation marks omitted). The Court concluded that the defendants had not made the requisite clear showing that the legislature viewed DUI as a "serious" offense. *Id.* at 544, 109 S.Ct. at 1293–94. Finally, the Court

ascribe[d] little significance to the fact that a DUI offender faces increased penalties for repeat offenses. Recidivist penalties of the magnitude imposed for DUI are com-

---

**14.** *Compare Miller v. Avirom*, 127 U.S.App.D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967) ("points not asserted with sufficient precision to indicate distinctly the party's thesis ... will normally be spurned on appeal") *and Hunter v. United States*, 606 A.2d 139, 144 (D.C.1992), *cert. denied*, 506 U.S. 991, 113 S.Ct. 509, 121 L.Ed.2d 444 (1993) (same) *with Yee v. City of Escondido*, 503 U.S. 519, 534, 112 S.Ct. 1522, 1532, 118 L.Ed.2d 153 (1992) (differentiating between "claims" and "arguments," and stating that al-

though claims not presented in a lower court will not be considered, "parties are not limited to the precise arguments they made below") *and Mills v. Cooter*, 647 A.2d 1118, 1123 n. 12 (D.C.1994) (same).

**15.** As an alternative to incarceration, a defendant could be required to perform 48 hours of community service while dressed in "distinctive garb" identifying him as a DUI offender.

monplace *and, in any event, petitioners do not face such penalties here.*

*Id.* (emphasis added).

In 1993, the Court reaffirmed *Blanton* in *United States v. Nachtigal,* 507 U.S. 1, 113 S.Ct. 1072, 122 L.Ed.2d 374 (1993) (per curiam). Nachtigal was charged with DUI in Yosemite National Park. A federal regulation made that offense punishable by imprisonment for six months and a $5,000 fine. The sentencing judge was also authorized to impose an alternative five-year probationary term to which the court could attach "a host of discretionary conditions," twenty-one in number. *Id.* at 2, 5 n. *, 113 S.Ct. at 1072, 1074 n. * [16] The Court held that the monetary penalties and restrictive probation conditions to which Nachtigal was exposed "cannot approximate in severity the loss of liberty that a prison term entails." *Id.* at 5, 113 S.Ct. at 1074 (quoting *Blanton,* 489 U.S. at 542, 109 S.Ct. at 1292–93). The Court also reaffirmed the presumption that an offense carrying a maximum term of imprisonment of six months or less was "petty" for Sixth Amendment purposes, and that it would be a "rare" case in which that presumption could be overcome. *Id.* Indeed, notwithstanding the significant intrusion upon the defendant's liberty which could be effected by some of the authorized terms of probation, see note 16, *supra,* the Court viewed the case as "requir[ing] only a relatively routine application of the rule announced in *Blanton.*" *Id.*

■ *Blanton* and *Nachtigal* are dispositive here. In support of his contention that unlawful possession of cocaine and PDP are "serious" offenses for purposes of the right to a jury trial, Foote relies primarily on sanctions or remedies which are not included or even mentioned in the two statutes under which he was charged. Indeed, these sanctions and remedies are not punishment for violations of the drug possession or PDP statutes, and the trial judge had no authority to impose them as part of Foote's sentence. Rather, the remedies which Foote seeks to treat as criminal penalties could be imposed only in hypothetical civil or administrative proceedings (*e.g.,* eviction, forfeiture of assets, deportation or exclusion, driver's license revocation). Further, the issues in such civil or administrative proceedings would be entirely different from those here.[17]

*Blanton's* presumption that offenses carrying no more than six months incarceration are petty cannot, in our view, be effectively rebutted by reference to the potential remedies in hypothetical civil or administrative proceedings which have not been instituted against Foote, and in most cases could not be brought against him. At least on these facts, we conclude that, to the extent that the purported penalties of which Foote complains could not be imposed by the sentencing judge as punishment for the two charged offenses, Foote's reliance on such uncertain and purely collateral consequences [18] of his conviction must fail.[19]

■ Foote contends that, pursuant to 21 U.S.C. § 862(b) and (d), the trial judge had the authority, as part of the sentence, to render Foote ineligible for one year for certain federal benefits specified in the statute, including "any [federal] grant, contract, loan, professional license, or commercial license." [20] Assuming, as the statute suggests, that a Superior Court judge has such authority, ineligibility for grants, loans or licenses

---

16. The sentencing judge was authorized, for example, to require the defendant to "reside at or participate in a program of a community correctional facility for all or part of the probationary term." 507 U.S. at 5 n. *, 113 S.Ct. at 1074 n. *. The defendant could also be compelled to "take part in a drug and alcohol dependency program offered by an institution, and if necessary, reside at the institution." *Id.*

17. For example, as we have noted, Foote could be evicted only if his rental unit was a "drug haven." The offenses in this case were committed on the street.

18. *See United States v. Del Rosario,* 284 U.S.App. D.C. 90, 94, 902 F.2d 55, 59, *cert. denied,* 498 U.S. 942, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990).

19. We confine this conclusion to the present record, for "the future may bring scenarios which prudence counsels our not resolving anticipatorily." *Florida Star v. B.J.F.,* 491 U.S. 524, 532, 109 S.Ct. 2603, 2609, 105 L.Ed.2d 443 (1989).

20. Foote would remain eligible under Section 862(d) for any retirement, Social Security, health, disability, and veteran's benefits to which he might otherwise be entitled.

for a period of one year (during up to one half of which Foote would be incarcerated) is far "less embarrassing and less onerous than six months in jail." *Blanton, supra,* 489 U.S. at 544, 109 S.Ct. at 1294.

■ Finally, although Foote has a substantial record of prior convictions, he was not charged as a recidivist. *See* D.C.Code § 22–104. Under these circumstances, Foote's reliance on "commonplace" recidivist penalties which he personally was not facing is foreclosed by *Blanton.* 489 U.S. at 545, 109 S.Ct. at 1294.

*Blanton* and *Nachtigal* instruct that only in the rare and exceptional case will a defendant be entitled to a jury trial if the maximum period of incarceration for the offense with which he is charged is six months or less. Pursuant to these authorities, Foote was required to demonstrate that the Council "clearly" views the offenses with which he was charged as serious rather than petty. He has made no such showing.

*Affirmed.*