Thomas H. THOMAS, Appellant

v.

UNITED STATES, Appellee.

No. 04–CM–1281.

District of Columbia Court of Appeals.

Argued Oct. 5, 2007.

Decided Feb. 28, 2008.

---

Jerry Ray Smith, for appellant.

Suzanne C. Nyland, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, Roy W. McLeese III and Lynn E. Haaland, Assistant United States Attorneys, were on the brief for appellee.

Before RUIZ, BLACKBURNE–RIGSBY, and THOMPSON, Associate Judges.

BLACKBURNE–RIGSBY, Associate Judge:

After a bench trial, appellant Thomas H. Thomas was convicted of two counts of misdemeanor child sexual abuse under D.C.Code § 22–3006 (2001). Prior to his sentencing hearing, Mr. Thomas moved to set aside the guilty verdict, claiming that he received evidence, in the form of a letter, that exonerates him from the charges against him. The trial judge denied the motion without an evidentiary hearing and sentenced appellant to 220 days in jail. Additionally, he was required to register pursuant to the Sex Offenders Registration Act ("SORA")[1] for 10 years.

Mr. Thomas appeals his convictions based upon two grounds: (1) the trial court abused its discretion when it denied his motion for a new trial without a hearing (specifically, without hearing from Ms. Dobbins, the alleged author of the letter containing the information he claimed exonerated him); and (2) the trial court should have afforded him a jury trial because the additional penalty of registering as a sex offender pursuant to SORA removed this case from the kind the legislature deemed "petty." We agree with appellant that he was entitled to an evidentiary hearing on the newly discovered evidence and potentially exculpatory information contained in this letter. We disagree that the SORA requirement altered the legislature's determination that misdemeanor child sexual

abuse is a non-jury demandable offense. Therefore, we reverse in part and remand for an evidentiary hearing on appellant's motion for a new trial, and we affirm the trial court's determination that appellant was not entitled to a jury trial.

## I.

On or about August 9, 2003, appellant picked up E.M., his seven-year-old daughter, for their scheduled weekend visit and brought E.M. to his one-bedroom apartment in Washington, D.C. E.M. spent the entire weekend at appellant's house. Appellant's girlfriend Karlytta Wynn and his two-year-old son Ramir[2] stayed the weekend at Mr. Thomas's house as well. While Karlytta, E.M., and Ramir slept in the bedroom, Mr. Thomas slept on the couch.

E.M. testified[3] that at some point during the weekend Mr. Thomas touched her private parts while they were both on the couch. She stated that she was wearing shorts and a T-shirt, and Mr. Thomas touched her with his hand. She did not say anything to him while it was happening and could not remember exactly how long it happened. She also testified to another incident, that same weekend, where Mr. Thomas asked her to touch his penis, and she complied.

E.M. returned to her mother's home on Sunday, but left shortly thereafter to go to summer camp. Upon returning from camp, E.M. told her mother, Diane Marcus, and grandmother "what daddy did, [he] touch[ed] my privates." Ms. Marcus called Mr. Thomas to discuss the event.

1. D.C.Code § 22–4002 (2001).

2. Mr. Thomas and Sylvia Dobbins are the parents of Ramir. Ms. Dobbins was not called as a witness and did not participate in the trial at all. After the verdict and before sentencing in Mr. Thomas's case, he claims to have received a letter from her admitting that she coerced E.M. into fabricating a sexual assault claim against him.

3. At the time of trial, E.M. was eight years old.

Mr. Thomas denied the accusation, but said that "he woke up one night or one morning and there was E.M. laying there next to him with no panties on ... he kept denying everything, but said can we get past this, we can get past this." Ms. Marcus testified that her response was, "If he didn't do anything what was there to get past."

The trial judge credited E.M.'s testimony. The judge stated that while E.M. was testifying about her father touching her private parts, her demeanor changed, and she began wringing her hands back and forth. She described the event with specificity and circled on a diagram, which the government introduced as an exhibit, where she was touched and where she touched her father. The trial judge also found Ms. Marcus to be credible, noting that prior to this event there was no evidence that she had any previous problems with Mr. Thomas and did not appear to have any motive to fabricate, misrepresent or exaggerate. The trial court did not credit the testimony of Mr. Thomas.

At the conclusion of the trial, the trial judge determined that the government had met its burden of proving misdemeanor sexual abuse and found that Mr. Thomas had touched. E.M.'s vagina and directed E.M. to place her hands on his penis to gratify sexual desires and also to humiliate, harass, degrade or arouse her.

On August 13, 2004, Mr. Thomas filed a Motion for a Hearing to Set Aside the Guilty Verdict, which the trial judge properly construed as a "Motion for New Trial." Attached to the motion was a three-page typewritten letter dated August 6, 2004 (the "August 6 Letter"), purportedly signed by appellant's ex-girlfriend Sylvia Dobbins, who is Ramir's mother. The letter asserted that Ms. Dobbins and Ms. Marcus had concocted a plan to coach and threaten E.M. into falsely accusing Mr.

Thomas of sexual abuse. The letter also apologized for previously sending Mr. Thomas "a very nasty letter" while he was in jail awaiting sentencing. The August 6 Letter was accompanied by an undated cover letter addressed to Mr. Thomas's attorney, asking him to bring the August 6 Letter to the attention of the trial judge.

The government responded to the Motion for New Trial with an affidavit from Detective Maria Flores, who testified previously at trial and was found to be a credible witness by the judge. Her affidavit was based upon information she acquired after trial by interviewing both Ms. Dobbins and Ms. Marcus. According to Detective Flores's affidavit, Ms. Dobbins had denied authoring the August 6 Letter or signing it and further denied participating in any scheme to encourage E.M. to fabricate a charge of sexual abuse against Mr. Thomas. In addition, Ms. Dobbins provided Detective Flores with an undated letter that she sent to Mr. Thomas while he was incarcerated and awaiting sentencing. In the letter, she condemned him for "destroy[ing] the innocence of a beautiful little girl" and forcing their son, Ramir, into foster care "once again." Detective Flores also contacted Ms. Marcus about the allegations in the August 6 Letter, and Ms. Marcus flatly denied that she and Ms. Dobbins invented the abuse allegation.

At the sentencing hearing on September 15, 2004, the trial judge denied the Motion for New Trial, without a hearing, determining that the August 6 Letter did not provide an adequate basis for setting aside the convictions and ordering a new trial. In denying the Motion for New Trial, the trial judge stated that he had "fully credited [E.M.'s] testimony" at trial, finding that her testimony was "candid" with "forthright details." The trial judge also recalled "seeing clear fear of [Mr. Thomas] ... during [E.M.'s] testimony." Against

that evidence, the court considered the August 6 Letter, which came not from the mother of the complaining witness but from the mother of another of Mr. Thomas's children, purportedly claiming that E.M. had been coached in her testimony. The court found that the August 6 Letter was "almost incredible on its face," containing "a variety of conflicting and implausible motives ... for ... coaching" E.M. The court also found it significant that the August 6 Letter was "diametrically opposed" to the gist of the letter Ms. Dobbins admitted to writing and sending to Mr. Thomas while he was awaiting sentencing.

Lastly, the trial court found that, even if Ms. Dobbins testified to participating in a scheme to frame Mr. Thomas, "she would have been an incredible witness," and thus, her testimony could not be the basis for granting a new trial. The trial judge reasoned that Ms. Dobbins could not credibly claim to be the author of the August 6 Letter after denying it to Detective Flores. In addition, if she admitted to helping other witnesses lie to the court, she would have no credibility as a witness. On the other hand, the trial judge reasoned, if she continued to maintain she did not write the letter, then there would be no basis for a new trial.

## II.

 In order to be entitled to a new trial based on newly discovered evidence, the defendant must show that the evidence proffered was (1) newly discovered; (2) was not obtainable with due diligence by the moving party; (3) not be merely cumulative or impeaching; (4) material to the issue involved; and (5) of such a nature that an acquittal would likely result if the new evidence were presented to a jury. *Herbin v. United States*, 683 A.2d 437, 441 (D.C.1996) (internal quotation and citations

omitted). We review the denial of a motion for a new trial without a hearing for abuse of discretion. *Id.* at 442 (citing *Derrington v. United States*, 488 A.2d 1314, 1341 (D.C.1985)). When issues of credibility are crucial to a determination of whether a defendant is entitled to a new trial, the judge must have an evidentiary basis—usually developed at a hearing where the relevant witnesses testify—before the new trial motion may be denied. *See Arrington v. United States*, 804 A.2d 1068, 1077 (D.C.2002) (noting that "whether the proffered evidence was newly discovered, whether [defendant] exercised diligence in his pursuit of the evidence, and whether the evidence was likely to lead to [defendant's] acquittal, could be illuminated by an evidentiary hearing").

In *Arrington*, we concluded that several of the factors set forth in *Herbin*, such as whether the evidence was newly discovered and whether the evidence would likely result in Mr. Arrington's acquittal, would be illuminated by an evidentiary hearing. *Arrington, supra*, 804 A.2d at 1077. Attached to Mr. Arrington's motion was an affidavit from Mr. Murray, whom Mr. Arrington met in prison after he was convicted. *Id.* at 1076. Mr. Murray admitted in his affidavit that he and not Mr. Arrington committed the crime attributed to Mr. Arrington. *Id.* Noting that the facts contained in Mr. Murray's affidavit, if true, cleared Mr. Arrington of all wrongdoing, we stated that "an evidentiary hearing to assess Murray's credibility would have been appropriate." *Id.*

Mr. Thomas argues that the newly discovered evidence contained in the August 6 Letter exonerates him, and that the trial judge abused his discretion by ruling on the motion without an evidentiary hearing to assess the credibility of any witness with knowledge of these critical facts. Neither party disputes that several of the

factors in *Herbin* are present in this case. The August 6 Letter is newly discovered, could not have been obtained prior to trial because it was not written, and, if true, the letter is more than just impeaching or cumulative and would completely exonerate Mr. Thomas. *See Herbin, supra,* 683 A.2d at 441 (internal quotation and citations omitted). The parties, therefore, focused their arguments on whether the letter had been sent by Ms. Dobbins and was credible.

We agree that an evidentiary hearing was necessary to assess Ms. Dobbins's credibility, particularly because she had not testified at trial. Additionally, if credible, the information in the August 6 Letter would exonerate Mr. Thomas. Instead, the trial judge ruled based upon E.M.'s and Ms. Marcus's trial testimony and Detective Flores's[4] post-trial affidavit, which contained unsworn hearsay statements from Ms. Dobbins. The court abused its discretion when it found that the August 6 Letter was "almost incredible on its face" without hearing Ms. Dobbins's testimony and making a credibility determination about her. A hearing was particularly important in light of the conflicting undated letter that Ms. Dobbins allegedly admitted (according to Detective Flores's affidavit) to sending to Mr. Thomas in jail. The undated letter condemned Mr. Thomas for "destroy[ing] the innocence of a beautiful little girl" and forcing their son, Ramir, into foster care "once again." The trial court determined this letter to be "diametrically opposed" to the August 6 Letter.

The government argues—and we have held—that a trial court may determine that newly discovered evidence from a recanting witness is inherently incredible without an evidentiary hearing, when affidavits are produced. *See Bell v. United States,* 871 A.2d 1199, 1201 (D.C.2005) (concluding that a trial judge who heard a witness who later recanted his testimony by affidavit as well as other witnesses' testimony at trial, was in a position to assess the credibility of the affidavit of recantation without an evidentiary hearing). Unlike *Bell,* Ms. Dobbins is not a recanting witness, and the judge did not have a prior opportunity to observe Ms. Dobbins's appearance and demeanor as a witness. Although Detective Flores was the investigator in the sexual abuse case and met with Ms. Dobbins, the detective had no direct knowledge about the August 6 Letter. She was merely repeating what Ms. Dobbins had told her, without any basis for vouching—or disavowing—Ms. Dobbins's credibility on that point. In fact, if there was an evidentiary hearing, Detective Flores's testimony on that subject would have been inadmissible hearsay (except for possible impeachment purposes). The court abused its discretion by making a credibility determination based on the double hearsay affidavit of Detective Flores—finding the letter incredible and Ms. Dobbins an unbelievable witness—without giving Ms. Dobbins the opportunity to testify under oath and without observing her character and demeanor firsthand on the witness stand and without allowing defense counsel the opportunity to question the witness about any perceived inconsistencies between the two letters she purportedly sent to appellant. *See Brenke v. United States* 78 A.2d 677, 678 (D.C.1951) (noting that the trial judge has the right and responsibility of judging a witness by his appearance and demeanor on the stand when assessing credibility).

---

4. Detective Flores is a detective at the Metropolitan Police Department in the Youth Division. She was the lead detective who investigated the child sexual assault charges against Mr. Thomas. She had interviewed E.M. and testified at trial.

### III.

 The court did not commit error—let alone plain error—when it held a bench trial instead of a jury trial for the two counts of misdemeanor child sexual abuse. Because Mr. Thomas failed to raise this issue at trial, we review "in accordance with the extremely limited plain-error standard." *Spriggs v. United States*, 618 A.2d 701, 704 (D.C.1992). Under this test, appellant must show (1) that the trial court's failure to afford him a jury trial was an "error," (2) that the error was "plain" and (3) that it affected appellant's substantial rights. *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citing *United States v. Olano*, 507 U.S. 725, 733–35, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993)). If these conditions are met, we must determine if "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.*

 The Supreme Court has held that "there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision," and "that the most relevant criterion for determining the seriousness of the offense is the severity of the maximum authorized penalty." *Blanton v. City of North Las Vegas, Nevada*, 489 U.S. 538, 541, 109 S.Ct. 1289, 1292, 103 L.Ed.2d 550 (1989) (internal quotation marks and citation omitted). An offense is considered "petty" if it is punishable by a sentence of no more than 180 days of incarceration. *Smith v. United States*, 768 A.2d 577, 579 (D.C.2001). In order to be entitled to a jury trial for a "petty" offense, a defendant must show that any additional penalties (i.e., penalties other than incarceration) "are so severe that they clearly reflect a legislative determination that the offense in question is a serious one." *Foote v. United States*, 670 A.2d 366, 371 (D.C.1996). This standard, although "somewhat imprecise," would "insure the availability of a jury trial in the *rare situation* where a legislature packs an offense it deems serious with onerous penalties that nonetheless do not puncture the 6–month incarceration line." *Id.* (internal quotation marks and citations omitted) (emphasis added).

Appellant contends that the Council of the District of Columbia indicated that society regards child sexual abuse, even though a misdemeanor, as a serious crime that warrants a jury trial, because the Council mandated registration with SORA. However, given that misdemeanor child sexual abuse falls squarely within the crimes that we define as "petty" because its maximum penalty is 180 days, *see* D.C.Code § 22–3006, Mr. Thomas must show that any additional penalties (i.e., penalties other than incarceration) are so severe that they clearly reflect a legislative determination that the offense in question is a serious one. Appellant cannot meet that burden.

We have fully analyzed SORA in *In re Doe*, 855 A.2d 1100, 1103–07 (D.C.2004), and *In re W.M.*, 851 A.2d 431, 440–51 (D.C.2004). In each of these cases, we concluded that SORA is a remedial regulatory enactment, not a penal law, that was adopted to protect the public, especially minors, from the threat of recidivism posed by sex offenders who have been released into the community. *Doe, supra*, 855 A.2d at 1102–03; *W.M., supra*, 851 A.2d at 441. Because registration with SORA is an administrative requirement and not penal in nature, we conclude that the Sixth Amendment does not require that we divert in this case from the statute that calls for jury trial in only these cases where the maximum penalty exceeds 180 days. *See* D.C.Code § 16–705(a) & (b). Accordingly, the trial court did not err in hearing this matter as a bench trial.

## IV.

The trial court abused its discretion when it denied appellant's motion for a new trial, based on evidence he alleged would exonerate him, without holding an evidentiary hearing. The trial court did not err in proceeding with the case in a bench trial where the crimes were designated by statute as misdemeanor offenses with maximum penalties of 180 days, which therefore did not implicate the Sixth Amendment right to a jury trial. The administrative requirement that appellant register pursuant to SORA does not change the crime's status as a petty offense. Therefore, we reverse in part and remand for an evidentiary hearing on appellant's motion for a new trial, and we affirm the trial court's determination that appellant was not entitled to a jury trial.

*So Ordered.*