Liz V. FRETES–ZARATE, Appellant,

v.

UNITED STATES, Appellee.

No. 11–CM–74.

District of Columbia Court of Appeals.

Argued Feb. 23, 2012.
Decided March 29, 2012.

Enid Hinkes, for appellant.

Peter Lallas, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III, Chrisellen R. Kolb, Erik Zwicker, and Adam B. Schwartz, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, EASTERLY, Associate Judge, and PRYOR, Senior Judge.

PER CURIAM:

Appellant, Liz V. Fretes–Zarate, appeals her conviction for simple assault in violation of D.C.Code § 22–404 (2009 Supp.). She argues that she had a constitutional right to a trial by jury for this offense because a conviction subjects her to deportation under federal immigration law. She also argues that she was denied a fair trial by the prejudicial errors of a translator, and that the trial judge erred in not allowing her to impeach the complaining witness with evidence of a prior civil protection order she had obtained against him. Lastly, she contends the evidence was legally insufficient to convict. We deem her first contention to be the sole issue meriting extended discussion. Defense counsel did not request a jury trial at any point in the proceedings, therefore, we review for plain error and for the reasons set out below, we affirm.

## I. Factual Background

Appellant, a citizen of Paraguay, has lived in the United States for six years. She was married for a period of two and a half years to the complaining witness before they divorced. At the time of the offense, both parties were seeking sole custody of their four-year-old son. In August 2010, the government filed an information charging appellant with a single count of simple assault, and a bench trial was conducted by the trial judge. A review of the record confirms that defense counsel did not request a jury trial at any point in the proceedings.

After the trial began, defense counsel notified the trial judge that an interpreter was needed and the trial judge suspended the proceedings so that an interpreter could be secured. Defense counsel represented to the judge that appellant spoke some English, and appellant assured the judge that she did not wish to repeat the proceedings again from the beginning. Based on his observations of appellant in dialogue with her counsel, the trial judge noted on the record that appellant appeared to have a working knowledge of the English language. On a number of occasions over the course of appellant's subsequent testimony, the interpreter asked for clarifications and interrupted proceedings to explain the translation. Defense counsel never objected to the quality of the translation.

During the trial, both appellant and complainant testified, each to a different version of events. Both testified that on August 16, 2010, appellant spent the night at complainant's house with their son. Complainant testified that the next morning appellant became upset when he left the house on an errand without letting her know he was leaving. He stated that appellant left his home in an angry state. He testified that, not long afterwards, he got into his truck with his son and drove to a store. As he drove, he noticed appellant following him in her car and then heard her blow her car horn excessively. When complainant pulled over to the side of the road, appellant pulled up behind him. Appellant then approached complainant's car. Complainant testified that appellant was argumentative and eventually reached into his car, grabbed his arm, and scratched him. He also testified that she attempted to spit on him. He stated that he tried to raise the window but that the safety override system in the car prevented him from closing the window while she was leaning inside the car. He stated that he was eventually able to drive away and that he drove directly to the police station.

Appellant testified that she went to complainant's home because she was trying to obtain his signature on a document needed to enroll their son in school. She testified that complainant refused to sign the document and that she stayed overnight in the hope that he would cooperate the next morning; she stated she became frustrated with his continued refusal to sign the next morning. Appellant testified that complainant drove away with their son and that she followed him with the intention of obtaining his signature on the school enrollment document. Appellant denied honking her horn or doing anything to force Mr. Johnson to stop his car.

The government presented a photograph of complainant's arm, which was taken at the police station and which showed several scratches. An officer of the Metropolitan Police Department testified that the complaining witness had what appeared to be "fresh scratches on his arm" when he arrived at the police station. Defense counsel presented a photograph of both of appellant's arms, which was taken at the police station and which also showed scratch marks.

During complainant's testimony, the trial judge stated, in reference to the prior relationship between the complaining witness and appellant, that "anything that's happened before is not before me." The trial judge also excluded testimony regarding allegations of prior assaultive conduct by appellant against her son.

Appellant filed a timely notice of appeal from her conviction.

## II. Analysis

On appeal, appellant argues that she had a constitutional right to a jury trial because her conviction subjects her to deportation under federal immigration law. She argues that the possibility of deportation transformed her simple assault charge into a "serious" offense mandating a jury trial. She argues further that the trial judge was on notice of appellant's status as a non-citizen and should therefore have advised appellant *sua sponte* of her right to a jury trial. In this instance, we review for plain error, which permits this court to grant a remedy only where there is (1) an error, (2) that is "plain" or "'clear' or, equivalently, 'obvious,'" and (3) the error "'affect[s] substantial rights.'" *United States v. Olano*, 507 U.S. 725, 732–34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

"It has long been settled that 'there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision.'" *Blanton v. City of North Las Vegas*, 489 U.S. 538, 541, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989); *see also United States v. Nachtigal*, 507 U.S. 1, 5, 113 S.Ct. 1072, 122 L.Ed.2d 374 (1993). The most relevant criteria in determining the severity of the offense is "the maximum authorized penalty." *Blanton*, 489 U.S. at 541, 109 S.Ct. 1289 (quoting *Baldwin v. New York*, 399 U.S. 66, 68, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970)). There is a presumption that an offense carrying a maximum prison term of six months or less qualifies as a "petty" offense and "[a] defendant is entitled to a jury trial in such circumstances only if he can demonstrate that any additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a 'serious' one." *Id.* at 543, 109 S.Ct. 1289. This court has applied this analysis to a variety of collateral consequences, and held that these do not transform a misdemeanor offense into a serious offense mandating a jury trial. *E.g., Thomas v. United States*, 942 A.2d 1180, 1186 (D.C.2008) (requirement that defendant register under the Sexual Offender Rehabilitation Act does not render misdemeanor child sexual abuse a jury-demandable crime); *Foote v. United States*, 670 A.2d 366, 370 (D.C.1996) (collateral consequences including "residential eviction, forfeiture of assets, revocation of driving privileges, exclusion or deportation from the United States, ineligibility for federal benefits, and enhanced periods of incarceration for repeat offenders" do not transform a "petty" drug-possession offense into a "serious" offense under the Sixth Amendment); *Young v. United States*, 678 A.2d 570, 571 (D.C.1996) ("[T]he potential loss of a driver's license for one convicted of a misdemeanor drug offense carrying a maximum penalty of six months imprisonment in this jurisdiction does not transmogrify this petty offense into a serious offense requiring a jury trial.").

These cases, however, preceded the Supreme Court's decision in *Padilla v. Kentucky*, —— U.S. ——, 130 S.Ct. 1473, 1481, 176 L.Ed.2d 284 (2010), in which the Court highlighted the unique nature of one consequence that attaches to criminal convictions in particular—deportation. Address-

ing the obligations of trial counsel under *Strickland*,[1] the Court in *Padilla* held that defense counsel has an obligation to correctly advise an immigrant client of the collateral consequences, including the possibility of deportation, before advising the client to plead guilty to a criminal charge. *Id.* at 1478. In reaching that decision, the Court discussed the "changes to our immigration law [that] have dramatically raised the stakes of a noncitizen's criminal conviction."[2] *Id.* at 1481. Justice Stevens, writing for the court, declared:

Although removal proceedings are civil in nature, deportation is nevertheless intimately related to the criminal process. Our law has enmeshed criminal convictions and the penalty of deportation for nearly a century. And, importantly, recent changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders. Thus, we find it 'most difficult' to divorce the penalty from the conviction in the deportation context....

Deportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence.

*Id.* at 1481–82 (internal citations omitted). Indeed in this jurisdiction, in recognition of the severity of deportation as a consequence of a criminal conviction, a trial judge must administer a clear warning on the record regarding the implications of a criminal conviction for a non-citizen before accepting a plea of guilty. *See* D.C.Code § 16–713(a) (2001); *see also Mason v. United States*, 956 A.2d 63, 67 (D.C.2008) ("It is appropriate to routinely include the § 16–713(a) advice as part of the Rule 11 proceedings.").

This case raises a related but different question: the right to a jury trial of a noncitizen who is subject to deportation based on a conviction for an offense that is generally not tried by a jury. Of course, in earlier times, simple assault—the offense charged here—was tried by jury. In recent years, however, the D.C. Council has amended the statutory scheme in such a way as to eliminate the right to a jury trial for certain misdemeanor offenses. *See Burgess v. United States*, 681 A.2d 1090, 1094 (D.C.1996) (detailing legislative

---

1. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

2. For instance, in 1996, the U.S. Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act, adding domestic violence convictions and violations of civil protection orders as grounds for deportation. 8 U.S.C. § 1227(a)(2)(E). Under these amended provisions, applicable to appellant:

[a]ny alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment is deportable. For purposes of this clause, the term "crime of domestic violence" means any crime of violence (as defined in section 16 of Title 18, United States Code) against a person committed by a current or former spouse of the person, by an individual with whom the person

shares a child in common, by an individual who is cohabiting with or has cohabited with the person as a spouse, by an individual similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs, or by any other individual against a person who is protected from that individual's acts under the domestic or family violence laws of the United States or any State, Indian tribal government, or unit of local government.

8 U.S.C. § 1227(A)(2)(E)(i) (2008). A "crime of violence" is defined as:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another ...

18 U.S.C. § 16 (1984).

amendments).[3] Now, under D.C.Code § 22–404(a)(1), simple assault carries a maximum penalty of 180 days of incarceration, and is therefore deemed a petty offense in this jurisdiction, no longer a jury-demandable crime in the District of Columbia. *Burgess*, 681 A.2d at 1094.

In *Foote*, this court considered whether collateral consequences that could be imposed on a defendant convicted of a misdemeanor drug-possession offense, including "residential eviction, forfeiture of assets, revocation of driving privileges, *exclusion or deportation from the United States*, ineligibility for federal benefits, and enhanced periods of incarceration for repeat offenders," might entitle that defendant to a jury trial. 670 A.2d at 370 (emphasis added). Our inquiry was whether the statutory penalties were so severe that they clearly reflect a legislative determination by the D.C. Council that the offense in question was a "serious" one. *Id.* at 373. Relying on *Blanton* and *Nachtigal*, this court held that none of these collateral penalties transformed a "petty" offense into a "serious" offense under the Sixth Amendment. *Id.* at 373. We explained that the collateral penalties in questions were not penalties that the trial judge had the authority to impose and were hypothetical penalties that could arise only in separate civil and administrative proceedings, "which ha[d] not been instituted against [the defendant], and in most cases could not be brought against him." *Id.* at 372. We described these as "uncertain and purely collateral consequences." *Id.*

However, in outlining the uncertain dynamics of the question, we necessarily come to our review " 'in accordance with

---

3. This court in *Burgess* described the relevant legislative amendments:

> For several decades, both assault and destruction of property were jury-triable offenses in the District of Columbia.... All of these statutes have recently been amended by the Council. First, section 16–705(b) was changed in 1993 to authorize a jury trial only when the offense carries a possible fine of more than $1,000 or possible imprisonment for more than 180 days (with the same six-month exception for contempt of court). Criminal and Juvenile Justice Reform Amendment Act of 1992, D.C. Law 9–272, § 202, 40 D.C.Reg. 796, 799 (effective May 15, 1993); see D.C.Code § 16–705(b) (1996 Supp.). Then, a little more than a year later, the Council enacted the Omnibus Criminal Justice Reform Amendment Act of 1994 (OCJRAA), D.C. Law 10–151, 41 D.C.Reg. 2608 (effective August 20, 1994). A key provision of this act incorporated several parts of an earlier legislative proposal, known as the "Misdemeanor Streamlining Act," which reduced the maximum penalties for a variety of crimes so as to make them non-jury-demandable.

*Id.* (footnotes omitted).

These amendments distinguish the District from the vast majority of the fifty states in our union who afford, either under their state constitutions or by statute, a right to a jury trial to anyone charged with a crime where there is a possibility of imprisonment for any period of time. *See generally* David L. Hemond, Brief Review of Right in 49 States to Jury Trial for Minor Crimes (1998) (available at http://www.cga.ct.gov/lrc/recommendations/1999%20recommendations/JuryTrial49StatesRpt.htm). Indeed, only nine states (Delaware, Louisiana, Mississippi, Nebraska, Nevada, New Jersey, New York, Pennsylvania, and Rhode Island) and the District limit the right to a jury trial to individuals charged with crimes carrying a sentence of more than 180 days. N.J. STAT. ANN. §§ 2C:1–4, :43–8 (West 1989); *Blanton v. North Las Vegas Mun. Court*, 103 Nev. 623, 748 P.2d 494, 498–99 (1987), aff'd sub nom. *Blanton v. City of North Las Vegas*, 489 U.S. 538, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989); *State v. Chiles*, 514 So.2d 150, 152 (La.App. 4 Cir.1987); *State v. Kennedy*, 224 Neb. 164, 396 N.W.2d 722, 727 (1986); *Eichenlaub v. Eichenlaub*, 340 Pa.Super. 552, 490 A.2d 918 (1985); *Morgenthau v. Erlbaum*, 59 N.Y.2d 143, 464 N.Y.S.2d 392, 451 N.E.2d 150, 156 (1983); *Thomas v. State*, 331 A.2d 147, 150 (Del. 1975); *McGowan v. State*, 258 So.2d 801, 803 (Miss.1972); *State v. Holliday*, 109 R.I. 93, 280 A.2d 333 (1971).

the extremely limited plain-error standard.'" *Thomas,* 942 A.2d at 1186. Under plain error review, this court considers whether there is (1) an error, (2) that is "plain" or "'clear' or, equivalently, 'obvious,'" and (3) that "'affect[s] substantial rights.'" *Olano,* 507 U.S. at 732–34, 113 S.Ct. 1770. "If these conditions are met, we must determine if 'the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Thomas,* 942 A.2d at 1186. In light of the settled law that simple assault is not a jury-demandable crime as well as this court's analysis in *Foote,* it was not plain, clear or obvious error in this case for appellant to be denied a jury trial.[4] Accordingly, we hold that the trial judge did not commit plain error in failing, *sua sponte,* to impanel a jury.[5]

Appellant raises a number of other arguments that are without merit. Based on the record before us, it was not plain error for the trial judge to fail to take remedial measures *sua sponte* in regards to the quality of the translation. *Ramirez v. United States,* 877 A.2d 1040, 1041 (D.C. 2005). Further, the trial judge did not abuse his discretion in excluding evidence of the existence of a civil protection order against Mr. Johnson. *See Harris v. United States,* 618 A.2d 140, 143–47 (D.C.1992). Finally, the trial judge's factual findings are firmly supported by the record and this court "will not redetermine the credibility of witnesses where ... the trial court had the opportunity to observe their demeanor and form a conclusion." *Shepherd v. United States,* 905 A.2d 260, 262 (D.C.2006). Accordingly, the judgment is hereby affirmed.

*So ordered.*

---

4. At oral argument, counsel for appellant noted that whether the consequence of deportation gives rise to a Sixth Amendment right to a jury trial for a petty offense is unlikely to arise in other jurisdictions because most states allow for jury trials on a much broader scale. While we have confirmed that our jury trial statute places us in the minority, *see* note 3 *supra,* this does not assist appellant in overcoming the hurdle of plain error in this case.

5. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C. 1971).