Washington, Senior Judge, concurring:
 

 As my colleagues have made clear in their competing opinions in this case, our attempt to reconcile the Supreme Court's decisions in
 
 Baldwin v. New York
 
 ,
 
 399 U.S. 66
 
 ,
 
 90 S.Ct. 1886
 
 ,
 
 26 L.Ed.2d 437
 
 (1970), and
 
 Blanton v. City of N. Las Vegas
 
 ,
 
 489 U.S. 538
 
 ,
 
 109 S.Ct. 1289
 
 ,
 
 103 L.Ed.2d 550
 
 (1989), with the D.C. Misdemeanor Streamlining Act,
 
 see
 
 Omnibus Criminal Justice Reform Act of 1994, D.C. Law § 10-151,
 
 41 D.C. Reg. 2608
 
 (effective Aug. 20, 1994), has resulted in a decision where two individuals charged with the same misdemeanor crime in the District of Columbia enjoy very different trial rights and privileges due to the severity of the consequences they individually face for committing that crime. I write separately because I am concerned that our decision today, while faithful to the dictates of
 
 Blanton
 
 , creates a disparity between the jury trial rights of citizens and noncitizens that lay persons might not readily understand. That disparity is one that the legislature could and, in my opinion, should address. The failure to do so could undermine the public's trust and confidence in our courts to resolve criminal cases fairly.
 

 In
 
 Baldwin
 
 , the Supreme Court interpreted the Sixth Amendment to the Constitution as guaranteeing a right to a jury trial only in criminal cases where an individual is charged with committing serious crimes. The Court went on to distinguish between serious and non-serious crimes, concluding that a serious crime was one that carried the possibility of incarceration for six months or more.
 
 Baldwin
 
 ,
 
 399 U.S. at 69
 
 ,
 
 90 S.Ct. 1886
 
 .
 

 In
 
 Blanton
 
 , the Supreme Court, while reiterating that the maximum potential sentence that can be imposed for the commission of a crime is a significant indicator of whether society considers the crime to be serious, also acknowledged that the length of the potential sentence does not necessarily end the inquiry if there are other "objective indications of the seriousness with which society regards the offense."
 
 Blanton
 
 ,
 
 489 U.S. at 541
 
 ,
 
 109 S.Ct. 1289
 
 (quoting
 
 Frank v. United States
 
 ,
 
 395 U.S. 147
 
 , 148,
 
 89 S.Ct. 1503
 
 ,
 
 23 L.Ed.2d 162
 
 (1969) ). As the majority opinion points out, the Supreme Court did not parse whether "the other penalties" were "penal" or "civil" in nature and referenced several penalties that were "civil" in nature when assessing the relative burdens faced by defendants in criminal cases.
 

 The Misdemeanor Streamlining Act (Act), passed in 1994, was designed to "relieve pressure on the court's misdemeanor calendars, allow for more cases to be heard by hearing commissioners, and allow for more felony trials to be scheduled at an earlier date." Council for the District of Columbia, Committee on the Judiciary, Report on Bill 10-98, at 3-4 (Jan. 26, 1994). The Act sought to accomplish these goals by reducing the maximum sentence that could be imposed for the commission of most misdemeanor crimes in the District of Columbia from six months or more to 180 days or less. By reducing the maximum possible sentence for the majority of misdemeanor offenses, the crimes no longer met the
 
 Baldwin
 
 threshold for serious crimes, and thus, the vast majority of defendants in the District of Columbia charged with misdemeanor crimes were no longer constitutionally entitled to a jury trial. Before today, we rarely, if ever, looked past the legislative intent expressed in the relevant criminal statutes to determine whether the Council and/or Congress intended for the crime to be considered a serious one. However, because we have interpreted
 
 Blanton
 
 as authorizing a broader view of the applicable statutory penalties for determining whether the crime is considered serious, we are in the unenviable position of trying to ascertain legislative intent without the benefit of a well-developed legislative record.
 

 As Justice Gorsuch recently noted in his concurring opinion in
 
 Sessions v. Dimaya
 
 , "[G]rave as th[e deportation] penalty may be ... many civil laws today impose ... many similarly severe sanctions." --- U.S. ----,
 
 138 S.Ct. 1204
 
 , 1231,
 
 200 L.Ed.2d 549
 
 (2018) (Gorsuch, J., concurring). That fact has not been lost on this court as we also have recognized that there are significant, if not similarly severe, sanctions that attach to convictions for misdemeanors in the District of Columbia.
 
 See
 

 Foote v. United States
 
 ,
 
 670 A.2d 366
 
 , 370 (D.C. 1996) (noting that appellant's counsel identified collateral consequences to include "residential eviction, forfeiture of assets, revocation of driving privileges, ... ineligibility for federal benefits, and enhanced periods of incarceration for repeat offenders") (footnotes omitted);
 
 see also
 

 Thomas v. United States
 
 ,
 
 942 A.2d 1180
 
 , 1186 (D.C. 2008) (condition that defendant register under the Sexual Offender Rehabilitation Act did not render misdemeanor child sexual abuse a jury-demandable crime);
 
 Young v. United States
 
 ,
 
 678 A.2d 570
 
 , 571 (D.C. 1996) ("[T]he potential loss of a driver's
 license for one convicted of a misdemeanor drug offense carrying a maximum penalty of six months imprisonment in this jurisdiction does not transmogrify this petty offense into a serious offense requiring a jury trial.").
 

 However, and for the first time, a majority of our court has relied on a collateral civil statutory penalty to transmogrify an otherwise petty offense into a serious crime and that means that the courts likely will be faced with new challenges in individual cases to the Act's limitation on the right to jury trials in misdemeanor cases. The majority opinion sees this as a relatively inconsequential matter as they believe that it will be the rare case where another civil statutory penalty will be considered severe enough to entitle a defendant to a jury trial in a misdemeanor case, while the dissent acknowledges the disparity, but argues that the anomaly supports their position that those of us in the majority are interpreting the Supreme Court's opinion in
 
 Blanton v. City of N. Las Vegas
 
 too expansively. Regardless, I agree with Justice Gorsuch's comment above that there are many other severe civil statutory penalties that have been attached to criminal convictions, in addition to deportation and, because it is the legislature's intent that must guide our analysis, the Council should speak clearly to the issue of whether the civil penalties that attach to certain misdemeanor crimes reflects a legislative judgment that the commission of those crimes is more serious than the potential criminal sentence might suggest.
 
 See
 

 Blanton
 
 ,
 
 489 U.S. at 541-42
 
 ,
 
 109 S.Ct. 1289
 
 ("The judiciary should not substitute its judgment as to seriousness for that of a legislature, which is 'far better equipped to perform the task, and is likewise more responsive to changes in attitude and more amenable to the recognition and correction of their misperceptions in this respect.' ") (brackets and citation omitted).
 

 Alternatively, the Council could reconsider its decision to value judicial economy above the right to a jury trial. Restoring the right to a jury trial in misdemeanor cases could have the salutary effect of elevating the public's trust and confidence that the government is more concerned with courts protecting individual rights and freedoms than in ensuring that courts are as efficient as possible in bringing defendants to trial. This may be an important message to send at this time because many communities, especially communities of color, are openly questioning whether courts are truly independent or are merely the end game in the exercise of police powers by the state. Those perceptions are fueled not only by reports that police officers are not being held responsible in the courts for police involved shootings of unarmed suspects but is likely also promoted by unwise decisions, like the one that authorized the placement of two large monuments to law enforcement on the plaza adjacent to the entrance to the highest court of the District of Columbia.
 

 One of the ways that the founders sought to ensure that citizens were protected from overreaching by the government was to guarantee a right to a jury trial to anyone charged with a crime. John Adams is famously quoted as saying, "Representative government and trial by jury are at the heart and lungs of liberty,"
 
 Rauf v. State
 
 ,
 
 145 A.3d 430
 
 , 465 n.216 (Del. 2016) (quoting Statement of John Adams (1774) ), and Thomas Jefferson "consider[ed] a trial by jury as the only anchor ... imagined by man by which a government can be held to the principles of its constitution." Letter from Thomas Jefferson to Thomas Paine (July 11, 1789),
 
 in
 
 15 The Papers of Thomas Jefferson, 27 March 1789-30 November 1789, 266 (Julian P. Boyd ed., 1958), http://founders.archives.gov/documents/ Jefferson/01-
 1502-0259. It is why the right to a jury trial is enshrined in the Sixth Amendment to the Constitution. And, while the D.C. Council complied with the letter of the law when it reduced the potential sentences for misdemeanor crimes to a level that made them non-jury demandable, that decision made us one of the few state court jurisdictions in the country that does not guarantee a right to a jury trial for those charged with criminal misdemeanors.
 
 [1]
 
 Most states recognize that a jury trial in criminal cases is critically important because of the stigma that accompanies a criminal conviction and many of those states accept the fact that any period of incarceration, no matter how short, can have a devastating impact on one's life and livelihood.
 
 See, e.g.
 
 ,
 
 State v. Benoit
 
 ,
 
 354 Or. 302
 
 ,
 
 311 P.3d 874
 
 , 882 (2013) (en banc) (requiring that any defendant subjected to pretrial arrest and detention be provided a jury trial, even if the state reduces such charge to a citation-only violation, as "[t]he stigma caused by criminal pre-charging procedures will not disappear when the prosecutor elects to charge a civil infraction") (quoting
 
 State v. Freeman
 
 ,
 
 487 A.2d 1175
 
 , 1178 (Me. 1985) );
 
 State v. Weltzin
 
 ,
 
 630 N.W.2d 406
 
 , 410 (Minn. 2001) (broadening the right to a jury trial to include all prosecutions where the penalty includes any incarceration).
 

 So, perhaps the answer to the anomaly created by our decision today is to hew more closely to the plain language of the Sixth Amendment and make no distinction between serious and petty crimes when it comes to an individual's right to a jury trial. If the Council chooses this latter
 path, it will not only address the disparity created by our attempt to faithfully apply
 
 Blanton
 
 in this case, but the District would also be rejoining the majority of other states where a jury trial in a criminal case is the norm, and not the exception. To me, this latter approach has many virtues.
 

 Thompson, Associate Judge, concurring in the judgment:
 

 The Supreme Court has instructed that, pursuant to the Sixth Amendment, a defendant who faces a maximum prison term of six months or less "is entitled to a jury trial ... if he can demonstrate that any additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they
 
 clearly reflect
 
 a legislative determination that the offense in question is a 'serious' one."
 
 [1]
 

 Blanton v. City of N. Las Vegas
 
 ,
 
 489 U.S. 538
 
 , 543,
 
 109 S.Ct. 1289
 
 ,
 
 103 L.Ed.2d 550
 
 (1989) (emphasis added);
 
 United States v. Nachtigal
 
 ,
 
 507 U.S. 1
 
 , 3-4,
 
 113 S.Ct. 1072
 
 ,
 
 122 L.Ed.2d 374
 
 (1993). Especially after the Supreme Court's opinion in
 
 Padilla v. Kentucky
 
 ,
 
 559 U.S. 356
 
 ,
 
 130 S.Ct. 1473
 
 ,
 
 176 L.Ed.2d 284
 
 (2010), I believe there is little room for dispute that deportation or "removal," which the federal immigration statute prescribes for non-citizens convicted of any of a broad range of crimes, is a "particularly severe [statutory] penalty,"
 
 [2]
 

 id.
 
 at 365,
 
 130 S.Ct. 1473
 
 , and "is an integral part-indeed, sometimes the most important part-of the penalty that may be imposed on noncitizen defendants who [are found] guilty [of] specified crimes."
 
 Id.
 
 at 364,
 
 130 S.Ct. 1473
 
 (footnote omitted);
 
 see also
 

 Sessions v. Dimaya
 
 , 584 U.S. ----,
 
 138 S.Ct. 1204
 
 , 1209,
 
 200 L.Ed.2d 549
 
 (2018) (reiterating that "deportation is a particularly severe penalty, which may be of greater concern to a convicted alien than any potential jail sentence," and that "removal proceedings [have become] ever more intimately related to the criminal process" (internal quotation marks omitted) ). Under the test set out in
 
 Blanton
 
 , however, to determine whether the immigration statute's prescription of deportation as an additional penalty for a non-citizen convicted of a specified criminal offense triggers the Sixth Amendment right to trial by jury, we must also ask whether the penalty of deportation "clearly reflect[s]" a determination by Congress that the offense is a " 'serious' one."
 
 Blanton
 
 ,
 
 489 U.S. at 543
 
 ,
 
 109 S.Ct. 1289
 
 .
 

 In my view, we have no basis for concluding that Congress's prescription of deportation for non-citizens who are found to have committed
 
 any
 
 of the criminal offenses to which the deportation penalty is attached
 
 clearly
 
 reflects a determination by the legislature that all such offenses are serious ones. Congress has broadly declared as "deportable" offenses everything from possession of any more than 30 grams of marijuana to mass murder. Its declaration that conviction-of any of a long list of enumerated but quite different types of offenses-renders a non-citizen "deportable" is scant if any evidence that it views the offenses as serious in the Sixth Amendment sense. Indeed, as other courts have recognized, in general, the immigration-law treatment of a non-citizen convicted of a "deportable" crime frequently turns not on the seriousness of the crime
 committed but on the status of the non-citizen in other respects. For example, in
 
 Reyes v. Holder
 
 ,
 
 714 F.3d 731
 
 (2d Cir. 2013), the Second Circuit focused on the fact that an
 
 unadmitted
 
 alien convicted of a deportable "crime of moral turpitude" can qualify for a so-called "petty offense exception" to removal, while "[a] conviction involving [the same] petty offense ... may still render an admitted alien
 
 deportable
 
 [.]"
 

 Id.
 

 at 735
 
 .
 
 [3]
 
 The Second Circuit explained that "[a]lthough it may seem anomalous that a legally admitted alien can be rendered ineligible for special rule cancellation of removal while an unadmitted alien who committed
 
 the same crime
 
 can remain eligible, we have previously noted that Congress's harsher treatment of legal permanent residents ('LPRs') may be justified on the basis that 'an LPR's violation of American laws represents a greater betrayal or poses a heightened concern of recidivism, and therefore calls for harsher measures under the immigration laws.' "
 
 Reyes v. Holder
 
 ,
 
 714 F.3d at 737
 
 (quoting
 
 Jankowski-Burczyk v. INS
 
 ,
 
 291 F.3d 172
 
 , 179 (2d Cir. 2002) ) (citing
 
 Gonzalez-Gonzalez v. Ashcroft
 
 ,
 
 390 F.3d 649
 
 , 652 (9th Cir. 2004) ("LPRs enjoy substantial rights and privileges not shared by other aliens, and therefore it is arguably proper to hold them to a higher standard and level of responsibility than non LPRs.") ). The
 
 Reyes
 
 court also described Congress's action in amending the immigration statute in an attempt to "prevent the mass deportation of aliens who had arrived from some former Soviet bloc and Central American nations," by allowing them, including individuals with certain criminal convictions, to apply for " 'special rule' protection from deportation."
 
 Reyes
 
 ,
 
 714 F.3d at 733
 
 (quoting
 
 Tanov v. INS
 
 ,
 
 443 F.3d 195
 
 , 199 (2d Cir. 2006) );
 
 see
 

 8 C.F.R. § 1240.66
 
 (c) (2014). It might be said in short that immigration-law consequences of criminal conduct have less to do with the seriousness of offenses and more to do with a variety of other congressional policies and objectives with respect to characteristics of the offenders themselves.
 

 Furthermore, in the immigration statute, Congress has afforded non-citizens who have been convicted of some "deportable" offenses avenues of relief to avoid actual removal.
 
 See
 
 8 U.S.C. § 1229b (a)(3) ("The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien ... has not been convicted of any aggravated felony" (emphasis added) ). This, I believe we can conclude, is a signal from Congress that some offenses that expose non-citizens to the threat of deportation are not so serious after all. At the very least, the fact that Congress has authorized cancellation of removal for non-citizens convicted of any of a number of crimes precludes us from finding that the general penalty of removal "
 
 clearly reflect
 
 [s] a legislative determination that [such] offense[s] ... [are] 'serious' one[s]."
 
 [4]
 

 Blanton
 
 ,
 
 489 U.S. at 543
 
 ,
 
 109 S.Ct. 1289
 
 . Stated differently, the provisions of the federal immigration statute that render a convicted non-citizen "deportable" do not "furnish[ ] us with [an]
 

 objective criterion by which a line could ... be drawn ... between offenses that [Congress does or does not] regard[ ] as 'serious[.]' "
 
 Baldwin v. New York
 
 ,
 
 399 U.S. 66
 
 , 72-73,
 
 90 S.Ct. 1886
 
 ,
 
 26 L.Ed.2d 437
 
 (1970).
 

 By contrast, with respect to one category of offenses-those that Congress has termed "aggravated felonies"-Congress has given what I believe are clear signals that it regards the offenses as serious. In 8 U.S.C. § 1229b (a)(3), Congress has provided that ("[t]he Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States
 
 if the alien ... has not been convicted of any aggravated felony
 
 " (emphasis added) ). As the Supreme Court recognized just this term in
 
 Dimaya
 
 , "removal is a virtual certainty for an alien found to have an aggravated felony conviction." 584 U.S. at ----,
 
 138 S.Ct. at
 
 1211 ;
 
 see also
 

 Lopez v. Gonzales
 
 ,
 
 549 U.S. 47
 
 , 50,
 
 127 S.Ct. 625
 
 ,
 
 166 L.Ed.2d 462
 
 (2006) ("[T]he Attorney General's discretion to cancel the removal of a person otherwise deportable does not reach a convict of an aggravated felony.");
 
 United States v. Couto
 
 ,
 
 311 F.3d 179
 
 , 183-84 (2d Cir. 2002) ("[T]he Immigration and Nationality Act eliminated all discretion as to deportation of non-citizens convicted of aggravated felonies[.]");
 
 8 C.F.R. § 1240.66
 
 (c)(1) (2018) (providing that a non-citizen is ineligible for special rule cancellation if he or she has an aggravated felony conviction); Susan Pilcher,
 
 Justice Without a Blindfold: Criminal Proceedings and the Alien Defendant
 
 ,
 
 50 Ark. L. Rev. 269
 
 , 329 (1997) ("[A]voidance of an aggravated felony charge will often be of paramount concern, even at the cost of pleading guilty to an arguably more serious crime of moral turpitude, insofar as options for relief from deportation or waivers of future inadmissibility may remain available for the latter.").
 
 [5]
 

 Further, in
 
 8 U.S.C. § 1158
 
 (b)(2)(A)(ii), Congress has provided that a noncitizen is ineligible for asylum if the Attorney General determines that the noncitizen, "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." And through
 
 8 U.S.C. § 1158
 
 (b)(2)(B)(i) (2006), it has provided in addition that "an alien who has been convicted of an aggravated felony shall be considered to have been convicted of
 a particularly serious crime" for the purpose of
 
 8 U.S.C. § 1158
 
 (b)(2)(A)(ii).
 
 See
 

 Santos-Infante v. Att'y Gen. of the United States
 
 ,
 
 574 Fed.Appx. 142
 
 , 145 n.2 (3d Cir. 2014) ("An alien convicted of an aggravated felony is considered to have been convicted of a particularly serious crime for purposes of the asylum statute.... Such an alien is ineligible for asylum.").
 

 As I explained in my now-vacated opinion for the Division in this matter, if we are to take potential immigration consequences into account as a measure of the seriousness of an offense in Congress's estimation, I believe it is appropriate to look to whether Congress has at the same time provided avenues of relief whereby individuals convicted of a deportable offense may have the penalty of removal canceled-and, conversely, to whether, as to some deportable offenses, Congress has statutorily shut down all avenues of relief from removal. Congress's harsh treatment of non-citizens convicted of aggravated felonies, admitting of no exceptions, leaves no room for doubt that Congress views these as serious offenses, no matter the status of the offender. In light of the bars to relief from removal for non-citizens who have been convicted of aggravated felonies, I am satisfied that the crimes Congress has designated as falling within this category are offenses for which Congress has mandated statutory penalties that "clearly reflect a legislative determination that the offense[s] ... [are] 'serious' one[s]."
 
 Blanton
 
 ,
 
 489 U.S. at 543
 
 ,
 
 109 S.Ct. 1289
 
 .
 

 The parties agree that appellant Bado, a non-citizen, was convicted of an aggravated felony.
 
 See
 

 8 U.S.C. § 1101
 
 (a)(43)(A) (defining "aggravated felony" to include "sexual abuse of a minor"). At the time he made his jury demand, it was known that conviction of the crimes with which he was charged (three counts of misdemeanor sexual abuse of a child, in violation of
 
 D.C. Code § 22-3010.01
 
 (2001) ) would render him ineligible for cancellation of removal and ineligible for the asylum he was actively seeking before an immigration judge at the time he went to trial in the instant matter. Thus, he was charged with offenses that exposed him to inevitable statutory penalties, an inevitability by which Congress has clearly signaled that it regards the offenses as serious. For that reason, applying the teaching of
 
 Blanton
 
 , I conclude that Mr. Bado was entitled to a jury trial.
 
 [6]
 

 One final observation: The rationale I have set out above would afford noncitizens a jury trial when they are threatened almost inevitably with removal from this country (a fate that may be of greater concern to a convicted non-citizen than any jail sentence). It does so, however, without expanding the right to a jury trial to non-citizens in circumstances that (as Senior Judge Washington notes in his concurrence) may be impossible to distinguish from those of our fellow citizens who likely will face severe collateral consequences from misdemeanor convictions, but who, under our statutory and case law, have no right to a jury trial.
 

 For this reason, too, I believe the rationale and result set out above are the most
 appropriate resolution of the issue presented in this case.
 

 Glickman, Associate Judge, with whom Fisher, Associate Judge, joins, dissenting:
 

 I join Judge Fisher's dissent and wish only to elaborate on one point. In
 
 Blanton v. City of N. Las Vegas
 
 , the Supreme Court instructed that the Sixth Amendment right to a trial by jury turns on the seriousness of the charged offense in the eyes of the legislature that enacted it, as indicated by the severity of the penalties
 
 that
 
 legislature chose to attach to the offense.
 
 [1]
 
 "A defendant is entitled to a jury trial ...
 
 only
 
 if he can demonstrate" that those penalties-which consist of "the maximum authorized period of incarceration" together with "any additional statutory penalties"-"are so severe that they clearly reflect
 
 a legislative determination
 
 that the offense in question is a 'serious' one."
 
 [2]
 
 The views of other legislatures about the seriousness of the offense, and any additional penalties other legislatures impose upon persons convicted of that offense, are irrelevant to whether a particular defendant is entitled to a jury trial in a prosecution for that offense by the jurisdiction that enacted it.
 
 [3]
 

 The legislature that enacted the offense in the present case-misdemeanor sexual abuse of a minor-was the Council of the District of Columbia. A noncitizen defendant's conviction of that offense exposes him to the revocation of his or her privilege to remain in this country only under federal immigration law-law enacted by Congress. Deportation is a very severe penalty, but it is not a seriousness-defining penalty attached to misdemeanor sexual abuse of a minor by the legislature that enacted the offense.
 
 [4]
 
 It therefore has no bearing on whether the defendant is entitled to a jury trial in a prosecution for the crime.
 

 Under District of Columbia law, the gravity of misdemeanor sexual abuse of a minor is the same regardless of whether the crime is committed by a citizen or by an alien subject to removal. The maximum penalties that the District of Columbia Council has chosen to impose for commission of this offense by either a citizen or an alien are the same-180 days in prison and a $1,000 fine
 
 [5]
 
 -and they clearly are not onerous enough by themselves to trigger a right to a jury trial. A defendant convicted of misdemeanor sexual abuse of a minor also is required to register as a sex offender for ten years under the District of Columbia Sex Offender Registration Act ("SORA").
 
 [6]
 
 The SORA is "not punitive and does not inflict punishment,"
 
 [7]
 
 however, and this court previously has held that addition of the registration requirement does not render misdemeanor child sexual abuse a jury-demandable offense under the Sixth Amendment.
 
 [8]
 
 I conclude that appellant did not have a constitutional right to a jury trial in the present case.
 

 Accordingly, for the above reasons (and for the reasons set forth in Judge Fisher's dissent), I respectfully dissent.
 

 Fisher, Associate Judge, with whom GLICKMAN, Associate Judge, joins, dissenting:
 

 According to the majority, a citizen charged with misdemeanor sexual abuse of a child does not have a right to a jury trial, but a noncitizen charged with the very same offense does. This is a startling result, neither compelled nor justified by Supreme Court precedent. It most certainly is not, as the majority asserts, "a straightforward application of a
 
 Blanton
 
 analysis." Maj. Op. at 1252. Under
 
 Blanton
 
 , the seriousness of the offense is not measured on a case-by-case basis. Moreover, in my judgment, the prospect of removal (even the certainty of removal) from the United States is not relevant to determining whether the crime is a "serious" offense to which the right of trial by jury applies.
 

 If the maximum term of imprisonment is six months or less, a crime "is presumptively a petty offense to which no jury trial right attaches."
 

 United States v. Nachtigal
 
 ,
 
 507 U.S. 1
 
 , 4,
 
 113 S.Ct. 1072
 
 ,
 
 122 L.Ed.2d 374
 
 (1993). A defendant may rebut this presumption, but "only if he can demonstrate that any additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a 'serious' one."
 
 Blanton v. City of N. Las Vegas
 
 ,
 
 489 U.S. 538
 
 , 543,
 
 109 S.Ct. 1289
 
 ,
 
 103 L.Ed.2d 550
 
 (1989). This will be a "rare situation," the Court observed.
 

 Id.
 

 Indeed, "there has not yet been a case in which the [Supreme] Court found that an offense with a maximum authorized incarceration period of 6 months was a serious one so as to require a jury trial under the Sixth Amendment."
 
 State v. Woolverton
 
 ,
 
 52 Kan.App.2d 700
 
 ,
 
 371 P.3d 941
 
 , 944 (2016).
 

 Under
 
 Blanton
 
 and related Supreme Court decisions, the right to a jury trial turns on the seriousness of the charged offense in the eyes of the legislature that created it, as indicated by the severity of the penalty authorized and made applicable across the board to anyone who commits it. "In fixing the maximum penalty for a crime, a legislature 'include[s] within the definition of the crime itself a judgment about the seriousness of the offense.' "
 
 Blanton
 
 ,
 
 489 U.S. at 541
 
 ,
 
 109 S.Ct. 1289
 
 (quoting
 
 Frank v. United States
 
 ,
 
 395 U.S. 147
 
 , 149,
 
 89 S.Ct. 1503
 
 ,
 
 23 L.Ed.2d 162
 
 (1969) ). The seriousness of the offense is
 
 not
 
 measured on a case-by-case basis by the varying additional consequences an individual defendant might suffer based on his own circumstances unrelated to commission of the crime.
 

 The key question for us-one that the Supreme Court has not addressed-is whether deportation or removal (a consequence imposed by a different legislature) is the type of penalty that counts for purposes of determining the right to a jury trial. I think it does not. Deportation or removal is not part of the criminal penalty. It is, rather, a result (serious, no doubt) of abusing the privilege of living in this country.
 

 We have addressed this question in three previous cases, each time rejecting the argument.
 
 Foote v. United States
 
 ,
 
 670 A.2d 366
 
 , 372 (D.C. 1996) ("[T]he remedies which Foote seeks to treat as criminal penalties could be imposed only in hypothetical civil or administrative proceedings (
 
 e.g.
 
 , eviction, forfeiture of assets, deportation or exclusion, driver's license revocation).");
 
 Olafisoye v. United States
 
 ,
 
 857 A.2d 1078
 
 , 1084 (D.C. 2004) ("[A]dministrative deportation proceedings do not raise an otherwise petty offense to the level requiring a jury trial.");
 
 Fretes-Zarate v. United States
 
 ,
 
 40 A.3d 374
 
 , 374 (D.C. 2012) (post-
 
 Padilla
 
 decision applying plain error standard of review and rejecting defendant's argument "that she had a constitutional right to a trial by jury for [simple assault] because a conviction subjects her to deportation under federal immigration law"). These decisions do not bind the en banc court, and some of this language may be dictum, but the reasoning is sound.
 

 My colleagues rely much too heavily on
 
 Padilla v. Kentucky
 
 ,
 
 559 U.S. 356
 
 ,
 
 130 S.Ct. 1473
 
 ,
 
 176 L.Ed.2d 284
 
 (2010), which addressed a claim of ineffective assistance of counsel but said nothing about the right to a jury trial. It is one thing to say (as
 
 Padilla
 
 did) that a lawyer is required to assist her client in understanding the immigration consequences he will face by pleading guilty (regardless of whether those consequences are called "collateral" or "direct"). It is quite a different matter to conclude that the downstream consequence of deportation transforms a petty offense into a serious one.
 

 Padilla
 
 does describe "deportation [as] an integral part-indeed, sometimes the
 most important part-of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes."
 
 Padilla
 
 ,
 
 559 U.S. at 364
 
 ,
 
 130 S.Ct. 1473
 
 (footnote omitted). Nevertheless, the Supreme Court acknowledged, "it is not, in a strict sense, a criminal sanction."
 
 Id.
 
 at 365,
 
 130 S.Ct. 1473
 
 . That acknowledgment makes all the difference. We should not lose sight of the fact that
 
 Padilla
 
 did not purport to address the question presented here.
 

 The fact that removal will be a consequence if one is convicted of a certain crime does not mean it is a penalty or punishment that overcomes the presumption that the charge is a petty offense.
 
 [1]
 
 "Primary emphasis ... must be placed on the maximum authorized period of incarceration."
 
 Blanton
 
 ,
 
 489 U.S. at 542
 
 ,
 
 109 S.Ct. 1289
 
 . The operation of this principle is shown in cases of defendants who happen to be on probation (or another form of supervised release) for an earlier offense. Even the predictable consequence of additional incarceration does not count as part of the punishment when determining whether a jury trial is required.
 

 For example, in
 
 Brown v. United States
 
 ,
 
 675 A.2d 953
 
 (D.C. 1996), the defendant's conviction of a new offense led another judge to revoke his probation for a prior conviction, and he was sentenced to serve an additional 120 days in prison. Brown argued that this added punishment entitled him to a jury trial. We rejected that argument, holding that "[t]he fact that this revocation was triggered by the present offense does not make the additional 120 days in prison part of the punishment for this second offense."
 

 Id.
 

 at 955
 
 . Similarly here, removal may be triggered by the criminal conviction, but that causal link does not make removal part of the punishment for the crime.
 

 It has mattered to us before, and it should matter still, that removal is not part of the criminal process. It is not within the power of the trial judge to impose that consequence.
 
 See
 

 Foote
 
 ,
 
 670 A.2d at 370, 372
 
 (pointing out that "these sanctions and remedies [including "exclusion or deportation from the United States"] are not punishment for violations of the drug possession or PDP statutes, and the trial judge had no authority to impose them as part of Foote's sentence");
 
 People v. Suazo
 
 ,
 
 146 A.D.3d 423
 
 ,
 
 45 N.Y.S.3d 31
 
 , 32 ("Despite the gravity of the impact of deportation on a convicted defendant (
 
 see Padilla
 
 ...), deportation consequences are still collateral ... and do not render an otherwise petty offense 'serious' for jury trial purposes."),
 
 leave to appeal granted
 
 ,
 
 29 N.Y.3d 1087
 
 ,
 
 64 N.Y.S.3d 177
 
 ,
 
 86 N.E.3d 264
 
 (2017).
 

 The maximum period of incarceration is not the only relevant penalty, but
 
 Blanton
 
 requires us to ask whether any "additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a 'serious' one."
 
 489 U.S. at 543
 
 ,
 
 109 S.Ct. 1289
 
 . When honoring this command, we must keep firmly in mind that we are dealing here with two different legislatures. The immigration laws are enacted by Congress, while the offense at issue here was created by the Council of the District of Columbia.
 

 Under
 
 Blanton's
 
 holding, "[t]he judiciary should not substitute its judgment as to seriousness for that of a legislature."
 
 489 U.S. at 541
 
 ,
 
 109 S.Ct. 1289
 
 . The government therefore urges us to focus on the penalties assigned by the Council, the legislature which created the offense.
 
 See
 

 id.
 

 at 545 n.11,
 
 109 S.Ct. 1289
 
 (declining "invitation to survey the statutory penalties for drunken driving in other States. The question is not whether other States consider drunken driving a 'serious' offense, but whether Nevada does."). The majority quickly dismisses this important question.
 
 [2]
 
 But the "same legislature" argument mattered to us in
 
 Brown
 
 , where the defendant argued that the crime of drug possession was a "serious" offense because federal law punished the equivalent crime by a maximum penalty of one year in prison. We concluded that "[t]he question is not whether some other legislative authority, such as Congress, considers an offense 'serious,' but whether the Council of the District of Columbia does so."
 
 Brown
 
 ,
 
 675 A.2d at 955
 
 .
 
 [3]
 

 Does the seriousness of the offense vary depending on the identity of the defendant? The Supreme Court has never suggested that it does. To the contrary, the Court has emphasized that the focus must be on the offense charged, "not the particularities of an individual case."
 
 Lewis v. United States
 
 ,
 
 518 U.S. 322
 
 , 328,
 
 116 S.Ct. 2163
 
 ,
 
 135 L.Ed.2d 590
 
 (1996). In
 
 Lewis
 
 , for example, the defendant was charged with two petty offenses and faced a potential aggregate sentence of twelve months' imprisonment. Nevertheless, the Court rejected his claim that he should have been tried by a jury: "Where we have a judgment by the legislature that an
 
 offense
 
 is 'petty,' we do not look to the potential prison term faced by a
 
 particular defendant
 
 who is charged with more than one such petty offense."
 

 Id.
 

 (emphasis in original).
 
 [4]
 

 To be sure, a recidivist may be entitled to a jury trial when a first offender would not be, but that is because the penal statutes expressly subject him to a longer period of incarceration. In other words, a recidivist is deemed to have committed an aggravated form of the offense-in essence, a
 
 different
 
 offense with a different maximum sentence.
 

 Apart from being unprecedented, the majority's analysis enormously complicates the practice of criminal law. "Immigration law can be complex, and it is a legal specialty of its own."
 
 Padilla
 
 ,
 
 559 U.S. at 369
 
 ,
 
 130 S.Ct. 1473
 
 . The majority's holding signals that issues of immigration law will become the central focus of criminal litigation whenever a noncitizen has been charged with an offense that ordinarily does not require a trial by jury. Trial judges and practitioners of criminal law will have to acquire the expertise to make these judgments.
 
 See
 

 Suazo
 
 ,
 
 45 N.Y.S.3d at 32
 
 (finding it "to be highly impracticable ... to analyze the immigration consequences of a particular conviction on the particular defendant"). I would not add this complexity unless convinced that the Supreme Court has required it.
 

 Although the majority chooses not to think about them, Maj. Op. at 1260 n.34, further complications are certain to follow. Defendants inevitably will rely upon the majority's flawed analysis in an effort to distinguish themselves from others charged with the same offense. Will a doctor who stands to lose his professional license if convicted be entitled to a jury trial although a day laborer will not?
 
 [5]
 
 What about a defendant who may be evicted from public housing or lose (or be denied) other government benefits if he is convicted?
 
 [6]
 

 A citizen charged with this offense would not be entitled to a jury trial. The answer should be the same for Mr. Bado. I respectfully dissent.
 

 The majority of jurisdictions provide for the right to a jury trial where a "petty" offense is charged,
 
 see generally
 

 Fretes-Zarate v. United States
 
 ,
 
 40 A.3d 374
 
 , 378 n.3 (D.C. 2012) (noting that "only nine states (Delaware, Louisiana Mississippi, Nebraska, Nevada, New Jersey, New York, Pennsylvania, and Rhode Island) and the District limit the right to a jury trial to individuals charged with crimes carrying a sentence of more than 180 days"). Three additional states place some restrictions on the right to a jury trial for criminal offenses with penalties of six months or less of incarceration, but the outright denial of jury trials are much more limited. In Arizona, the right to a jury trial for misdemeanor offenses extends to charges only where the offense falls within a specific category, regardless of whether the statutory offense bears a penalty of six months or less of incarceration.
 
 See
 

 Derendal v. Griffith
 
 ,
 
 209 Ariz. 416
 
 ,
 
 104 P.3d 147
 
 , 153-54 (2005) (en banc) (delineating the test for determining jury eligibility for misdemeanor offenses in Arizona);
 
 see also
 
 ARIZ. REV. STAT. ANN. § 28-1381 (2017) (providing right to jury trial for misdemeanor offense of driving or actual physical control of a vehicle while under the influence where maximum punishment is up to six months incarceration);
 
 State v. Kalauli
 
 ,
 
 243 Ariz. 521
 
 ,
 
 414 P.3d 690
 
 , 696 (Ct.App. 2018) (noting that "one charged with violating the unified crime of theft is entitled to a jury trial, regardless of the degree of the offense or the nature of the property alleged to have been taken");
 
 cf.
 

 Fushek v. State
 
 ,
 
 218 Ariz. 285
 
 ,
 
 183 P.3d 536
 
 , 540-41 (2008) (en banc) (providing the right to a jury trial in any case where "the state has made a special allegation of sexual motivation"). In North Carolina, individuals charged with criminal misdemeanors are granted a bench trial first, then if found guilty, granted a jury trial.
 
 See
 
 N.C.G.S.A. § 15-173. Similarly, in Virginia, a "criminal defendant ... may be tried for a misdemeanor in a district court without a jury, even though the misdemeanor carries a potential sentence in excess of six months." Right to trial by jury, Va. Prac. Criminal Procedure § 16:3 (Dec. 2017) (citing
 
 Manns v. Virginia
 
 ,
 
 213 Va. 322
 
 ,
 
 191 S.E.2d 810
 
 (1972) ). "This is not a violation of the federal constitutional standard because Virginia authorizes an appeal of right and a trial
 
 de novo
 
 in the circuit court. The Virginia procedure thus extends beyond the federal standard because it guarantees an eventual right to a jury trial regardless of the length of the possible sentence."
 

 Id.
 

 (citing
 
 Va. Code Ann. §§ 16.1-132
 
 , 16.1-136, and
 
 Ludwig v. Massachusetts
 
 ,
 
 427 U.S. 618
 
 ,
 
 96 S.Ct. 2781
 
 ,
 
 49 L.Ed.2d 732
 
 (1976) ).
 

 For the reasons I explain, I believe the italicized language is critical to our resolution of this appeal.
 

 Deportation "may result in the loss of all that makes life worth living."
 
 Bridges v. Wixon
 
 ,
 
 326 U.S. 135
 
 , 147,
 
 65 S.Ct. 1443
 
 ,
 
 89 L.Ed. 2103
 
 (1945) (internal quotation marks omitted). It is "at times the equivalent of banishment or exile."
 
 Fong Haw Tan v. Phelan
 
 ,
 
 333 U.S. 6
 
 , 10,
 
 68 S.Ct. 374
 
 ,
 
 92 L.Ed. 433
 
 (1948).
 

 "Under the petty offense exception, a conviction for an offense involving moral turpitude does not render an unadmitted alien
 
 inadmissible
 
 ... when (1) the maximum penalty possible was a year or less, and (2) the alien was actually sentenced to less than six months in prison."
 

 Id.
 

 That is, the fact that a non-citizen, upon conviction of a particular offense, is rendered "deportable" pursuant to one provision of the immigration statute, cannot be taken as a clear measure of the seriousness of the offense where, under another provision of the same statute, Congress has created a path for the convicted non-citizen to avoid deportation.
 

 There are a few avenues of limited relief for a non-citizen who has been convicted of an aggravated felony. Such a non-citizen may be eligible for withholding or deferral of removal in accordance with this nation's obligations under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT).
 
 See
 

 8 U.S.C. § 1231
 
 (b)(3)(A) (2006) (providing that the Attorney General "may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion");
 
 8 C.F.R. § 1208.16
 
 (c)(2) (2018) (providing for withholding of removal if the non-citizen establishes that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal");
 
 8 C.F.R. § 1208.17
 
 (a) (2018) (providing for deferral of removal to the country where a non-citizen "is more likely than not to be tortured"). But these types of relief do not preclude the non-citizen from being deported to another country.
 
 See
 

 8 C.F.R. § 1208.16
 
 (f) (2018) ("Nothing in [§ 1208.16 or in 8 C.F.R.] § 1208.17 shall prevent the Service from removing an alien to a third country other than the country to which removal has been withheld or deferred.").
 

 It is worth noting that many (if not most) of the offenses designated as "aggravated felonies" under the federal immigration statute have statutory maximum periods of imprisonment under District of Columbia law that are in excess of 180 days, meaning that a defendant facing trial for them in the District of Columbia is already statutorily entitled to a jury trial.
 
 See, e.g.
 
 ,
 
 8 U.S.C. § 1101
 
 (a)(43)(F) (treating a "crime of violence ... for which the term of imprisonment [is] at least one year" as an aggravated felony);
 
 8 U.S.C. § 1101
 
 (a)(43)(G) (treating "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year" as an aggravated felony);
 
 see also
 

 Lopez v. Gonzales
 
 ,
 
 549 U.S. 47
 
 , 55-60,
 
 127 S.Ct. 625
 
 ,
 
 166 L.Ed.2d 462
 
 (2006) (holding that for a drug crime to be an aggravated felony, it must be an offense for which the maximum term of imprisonment authorized for the offense under federal law is more than one year).
 

 See
 

 489 U.S. 538
 
 , 541-43,
 
 109 S.Ct. 1289
 
 ,
 
 103 L.Ed.2d 550
 
 (1989). It perhaps is something of an open question whether non-punitive consequences are to be considered as penalties for the purpose of determining whether there is a constitutional right to a jury trial. I am inclined to think that only statutory penalties intended as or equating to criminal punishment should be considered.
 
 See
 

 id.
 

 at 541-42
 
 ,
 
 109 S.Ct. 1289
 
 ("In fixing the maximum penalty for a crime, a legislature 'include[s] within the definition of the crime itself a judgment about the seriousness of the offense.' ... We thus examine 'whether the length of the authorized prison term
 
 or the seriousness of other punishment
 
 is enough in itself to require a jury trial.' ") (emphasis in the original; citations omitted). Despite its severity, the removal or deportation of an alien under federal immigration law is not criminal punishment.
 
 See, e.g.
 
 ,
 
 Padilla v. Kentucky
 
 ,
 
 559 U.S. 356
 
 , 365,
 
 130 S.Ct. 1473
 
 ,
 
 176 L.Ed.2d 284
 
 (2010).
 

 Blanton
 
 ,
 
 489 U.S. at 543
 
 ,
 
 109 S.Ct. 1289
 
 (emphasis added).
 

 See
 

 id.
 

 at 545 n.11,
 
 109 S.Ct. 1289
 
 ("We decline petitioners' invitation to survey the statutory penalties for [the charged crime] in other States. The question is not whether other States consider [the charged crime] a 'serious' offense, but whether Nevada does."). My colleagues in the majority appear to misunderstand
 
 Blanton's
 
 statement that the Supreme Court has "frequently looked to the federal classification scheme in determining when a jury trial must be provided."
 

 Id.
 

 ; see
 
 ante
 
 at 1257 n.29. The Court viewed Congress's (former) definition of a "petty" offense (as a misdemeanor for which the maximum penalty did not exceed imprisonment for six months and a $5,000 fine) as a relevant indicator of what constitutes a "petty" offense for Sixth Amendment purposes and whether the penalties imposed by a State for a given offense are severe enough to trigger the constitutional right to a jury trial. In no way does this imply that Congress's own view of the seriousness of a State offense or the add-on consequences imposed by Congress in the event of a conviction of a State offense have any bearing on whether the defendant has a right to a jury trial in a State prosecution for that offense.
 
 See also
 

 Ivy v. United States
 
 ,
 
 2010 WL 1257729
 
 , *3,
 
 2010 U.S. Dist. LEXIS 28933
 
 , *8 (W.D. Ky. March 26, 2010) (holding the fact that defendant, if convicted in Kentucky, would have to register as a sex offender in Tennessee did not affect the
 
 Blanton
 
 analysis because "Tennessee's view of the seriousness of the Kentucky statute is not relevant to determination of the seriousness of that statute");
 
 Rauch v. United States
 
 ,
 
 2007 WL 2900181
 
 , *3,
 
 2007 U.S. Dist. LEXIS 72616
 
 , *8-*9 (E.D. Cal. Sept. 28, 2007) (obligation under California law to register as a sex offender upon conviction of federal misdemeanor offense did not entitle defendant to a jury trial on that offense; "Congress enacted 18 U.S.C. Section 2244 (b), not the California legislature. Thus the view of the State of California as to the seriousness of the offense is not relevant. Further, only 'statutory penalties' are to be considered as to the seriousness of the offense, and California's registration requirement is not a 'statutory penalty' for this offense, as it was not enacted by Congress in conjunction with Section 2244 (b).").
 

 Although the District of Columbia is not a State, and its government is a creation of Congress, I take it as a settled principle of Home Rule that we do not conflate Council legislation with Congressional legislation and that the principles enunciated in
 
 Blanton
 
 apply here.
 

 The District of Columbia also assesses up to $250 "[i]n addition to and separate from punishment imposed" for a misdemeanor conviction.
 
 D.C. Code § 4-516
 
 (a) (2012 Repl.).
 

 See
 

 D.C. Code § 22-4001
 
 (2012 Repl.).
 

 In re W.M.
 
 ,
 
 851 A.2d 431
 
 , 446 (D.C. 2004) ;
 
 see also
 

 In re Doe ("S.D.")
 
 ,
 
 855 A.2d 1100
 
 , 1102 (D.C. 2004) ("SORA is a remedial regulatory enactment and not a penal law[.]").
 

 Thomas v. United States
 
 ,
 
 942 A.2d 1180
 
 , 1186 (D.C. 2008).
 

 When applying other constitutional protections, the Supreme Court has deemed it "well settled that deportation, while it may be burdensome and severe for the alien, is not a punishment."
 
 Mahler v. Eby
 
 ,
 
 264 U.S. 32
 
 , 39,
 
 44 S.Ct. 283
 
 ,
 
 68 L.Ed. 549
 
 (1924). As a result, courts have held that removal from the United States does not implicate the constitutional prohibitions against
 
 ex post facto
 
 laws,
 
 Harisiades v. Shaughnessy
 
 ,
 
 342 U.S. 580
 
 , 594-95,
 
 72 S.Ct. 512
 
 ,
 
 96 L.Ed. 586
 
 (1952) ; double jeopardy,
 
 De La Teja v. United States
 
 ,
 
 321 F.3d 1357
 
 , 1364-65 (11th Cir. 2003) ; or cruel and unusual punishment,
 
 Eid v. Thompson
 
 ,
 
 740 F.3d 118
 
 , 126 (3d Cir.),
 
 cert. denied
 
 , --- U.S. ----,
 
 135 S.Ct. 175
 
 ,
 
 190 L.Ed.2d 51
 
 (2014), because deportation is not a criminal punishment. The Supreme Court has also held that evidence obtained in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures cannot be excluded from deportation proceedings, recognizing that "[t]he purpose of deportation is not to punish past transgressions ...."
 
 I.N.S. v. Lopez-Mendoza
 
 ,
 
 468 U.S. 1032
 
 , 1039,
 
 104 S.Ct. 3479
 
 ,
 
 82 L.Ed.2d 778
 
 (1984) ;
 
 see also
 

 Reno v. Am.-Arab Anti-Discrimination Comm.
 
 ,
 
 525 U.S. 471
 
 , 491,
 
 119 S.Ct. 936
 
 ,
 
 142 L.Ed.2d 940
 
 (1999) ("While the consequences of deportation may assuredly be grave, they are not imposed as a punishment ....").
 

 Congress has plenary power to legislate for the District of Columbia and may enact our criminal laws. U.S. Const., art. I, § 8, cl. 17. I thus do not question Congress's power to enact a penal statute applicable exclusively to the District of Columbia which provides that any noncitizen found guilty of misdemeanor sexual abuse of a child shall be removed from the country as part of the punishment for committing that crime. But that is only a theoretical possibility. Congress has not purported to do so here.
 

 See also
 

 Amezcua v. Eighth Judicial Dist. Ct.
 
 ,
 
 130 Nev. 45
 
 ,
 
 319 P.3d 602
 
 , 605 (2014) (potential federal immigration consequences "are not relevant because they do not reflect a determination by the Nevada Legislature that first-offense domestic battery is a serious offense"),
 
 cert. denied
 
 , --- U.S. ----,
 
 134 S.Ct. 2895
 
 ,
 
 189 L.Ed.2d 831
 
 (2014) ;
 
 cf.
 

 State ex rel. McDougall v. Strohson
 
 ,
 
 190 Ariz. 120
 
 ,
 
 945 P.2d 1251
 
 , 1256 (1997) (in determining whether defendant has right to jury trial under Arizona Constitution, Arizona courts have traditionally "look[ed] only to the consequences of conviction under Arizona law"; "[W]e do not consider the risk of deportation in determining whether the defendant is entitled to a jury trial on the state charge.").
 

 See also
 

 State ex rel. McDougall v. Strohson
 
 ,
 
 190 Ariz. 120
 
 ,
 
 945 P.2d 1251
 
 , 1256 (1997) ("In our earlier cases, we have never determined jury eligibility based upon an analysis of the individual defendant before the court. If we were to do so now, we would have the anomalous situation where some persons would be entitled to a jury trial and others would not, although charged with exactly the same substantive Arizona crime.").
 

 But see
 

 Smith v. United States
 
 ,
 
 768 A.2d 577
 
 , 580 (D.C. 2001) ("[W]e have no difficulty concluding that the legislature did not intend that potential termination [of police officer defendant if convicted should] elevate a petty crime such as simple assault to a jury-demandable offense.").
 

 I also note the incongruity of treating a misdemeanor as an "aggravated felony." The government does not protest, so the issue is not before us, and there is immigration law which endorses this oddity. Nevertheless, it is not clear to me that the Supreme Court would agree that
 
 misdemeanor
 
 sexual abuse of a child is an aggravated
 
 felony
 
 .
 
 See
 

 Esquivel-Quintana v. Sessions
 
 , --- U.S. ----,
 
 137 S.Ct. 1562
 
 , 1570,
 
 198 L.Ed.2d 22
 
 (2017) (noting that "the INA lists sexual abuse of a minor in the same subparagraph as 'murder' and 'rape,' [8 U.S.C.] § 1101 (a)(43)(A) -among the most heinous crimes it defines as aggravated felonies. § 1227(a)(2)(A)(iii). The structure of the INA therefore suggests that sexual abuse of a minor encompasses only especially egregious felonies.").